Filed 1/23/26  P. v. Walker CA4/2
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>FLOYD ROLAND WALKER III,<br><br>　　　Defendant and Appellant. | E077548<br><br>(Super.Ct.No. INF1402616)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Reversed and remanded.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Melissa Mandel, Acting Assistant Attorney General, Charles C. Ragland, Warren Williams and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant, Floyd Roland Walker III, of inflicting corporal injury upon a cohabitant. (Pen. Code, § 273.5, subd. (a), count 2.)[1] The jury also found that defendant personally inflicted great bodily injury (GBI) upon the victim, under circumstances involving domestic violence. (§ 12022.7, subd. (e).) The court found true allegations that defendant had served two prior prison terms (§ 667.5, subd. (b)), had one prior serious felony conviction (§ 667, subd. (a)) (nickel prior), and had one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). (*People v. Walker* (Mar. 21, 2019, E067404) (*Walker I*).)

The court sentenced defendant to an aggregate term of 17 years of imprisonment, including the upper term of four years, doubled pursuant to the strike prior, on the substantive offense. (*Walker I*, *supra*, E067404.) On remand from this court, the court declined to exercise its newfound discretion to strike the nickel prior. However, the court struck defendant's prior prison term enhancements pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.), which resulted in a reduction in defendant's aggregate term of imprisonment by one year, but which still included the upper term on the substantive offense. (*People v. Walker* (Jul. 29, 2022, E077548) (*Walker II*).)

On appeal, defendant contended the matter must be remanded a second time for resentencing pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.), which created a presumption for imposition of the middle term at sentencing. We affirmed, holding that any error was harmless beyond a reasonable doubt because any jury unquestionably

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

would have found true at least a single aggravating circumstance had it been submitted to the jury, and that we were assured that the trial court would have exercised its discretion to impose the upper term based on at least a single permissible aggravating factor, when the court originally relied on both a permissible and impermissible factor in selecting the upper term. (*Walker II*, *supra*, E077548.)

On June 11, 2025, the California Supreme Court issued an order directing us to vacate our decision and reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). We vacated our decision and offered the parties the opportunity to file supplemental briefs, which they have done.

Defendant contends the matter should be remanded for a full resentencing hearing because the trial court unconstitutionally relied upon its own factfinding to impose the upper term on defendant's conviction, and the error is not harmless beyond a reasonable doubt. The People maintain that reversal is unwarranted because the factors relied upon by the court to impose the upper term were proven by certified records of defendant's prior convictions, and that any error is harmless beyond a reasonable doubt.

On July 7, 2025, on our own motion, we vacated submission of the matter again and invited the parties to file supplemental briefs addressing the effect of *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*) in this case. Defendant argues that *Wiley* also compels reversal and remand of the matter for resentencing. We reverse and remand.

3

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At the time of the offense, the victim had dated defendant for about two years; they had a daughter together.  On July 4, 2014, defendant, the victim, and their daughter, who was about 16 months old at the time, were staying at a hotel-casino.  Throughout the day, defendant went back and forth between the hotel room and the casino, drinking and gambling.  He returned to the hotel room a final time around 11:00 p.m.; he was drunk and angry.  The victim was upset that she and their daughter had been stuck in the room all day, and that they had not seen the fireworks together.  (*Walker I*, *supra*, E067404.)

Defendant started yelling and slapped the victim on the face at least twice.  The victim went to lie down on the bed with their daughter to try to diffuse the situation.  However, defendant still yelled at her and called her names.  Defendant then hit the victim in the face.  Their daughter woke up crying; the victim tried to calm her down.  (*Walker I*, *supra*, E067404.)

Defendant grabbed their daughter from the victim and would not give her back.  He then stood up, held their daughter on his left side, and started punching the victim with his right hand; he also kicked her.  The victim screamed and asked for their daughter back.  Defendant went into the bathroom; the victim called the front desk.  Eventually, two security guards knocked on the door.  (*Walker I*, *supra*, E067404.)

The security guards observed that the victim had blood all over her face and was crying hysterically.  She said, "He's beating me, get him, get my baby."  They entered the room and saw defendant holding the baby, so they told him to put her down.  The guards

4

observed blood all over the room, including on the nightstand, telephone, side of the bed, the wall, and the carpet. The guards called the police. (*Walker I*, *supra*, E067404.)

A police officer arrived and observed that the victim was crying and shaking. Both her eyes were starting to swell and turn black and blue; she had a cut above her left eye, bruising and swelling on her nose, and a bruise on the left side of her cheekbone. The victim went to the hospital and a dentist to be examined. For several days, she could not move her jaw or talk very well. (*Walker I*, *supra*, E067404.)

On April 12, 2016, the People charged defendant by first amended information with cohabitant abuse resulting in a traumatic condition (§ 273.5, subd. (e)(1), count 1), cohabitant abuse (§ 273.5, subd. (a), count 2), and willful injury to a child (§ 273a, subd. (a), count 3). The People additionally alleged that, as to counts 1 and 2, defendant had inflicted GBI on the victim (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8)), and defendant committed all three offenses while released from custody (§ 12022.1). The People finally alleged that defendant had suffered two prior prison terms (§ 667.5, subd. (b)), one prior serious felony conviction (§ 667, subd. (a)), and one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). (*Walker II*, *supra*, E077548.)

The jury found defendant guilty of cohabitant abuse (§ 273.5, subd. (a), count 2) but not guilty of cohabitant abuse resulting in a traumatic condition (§ 273.5, subd. (e)(1), count 1). The jury deadlocked on the count 3 offense. The jury also found that, in his commission of the count 2 offense, defendant personally inflicted GBI upon the victim

5

under circumstances involving domestic violence. (§ 12022.7, subd. (e).) (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

At the bench trial on the prior conviction allegations, the People moved into evidence two section 969, subdivision (b), packets, which contained certified copies of defendant's relevant criminal records. The court found true allegations that defendant had served two prior prison terms (§ 667.5, subd. (b)), had one prior serious felony conviction (§ 667, subd. (a)), and had one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

The probation officer's report reflected that defendant had convictions for 10 prior misdemeanor offenses and four prior felony convictions, the latter of which included two prior cohabitant abuse and two prior assault convictions. Defendant had previously had his probation revoked and had multiple prior parole violations. (*Walker II*, *supra*, E077548.)

Defendant declined to be interviewed for the report. The probation officer recommended the court sentence defendant to the upper term on count 2. She noted that there were "no mitigating factors which apply to the defendant or his offense. He has served multiple prison sentences for domestic violence and assault, and his criminal history paints a disturbing pattern of violence against women, which needs to end." (*Walker II*, *supra*, E077548.)

Defense counsel orally moved the court to strike defendant's prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. He

6

argued there were mitigating factors with respect to the instant offense, including that there was "great provocation." He pointed to evidence that another hotel guest testified she heard a woman screaming. Defense counsel argued that "[i]t appeared as if the male voice was more calm and reserved, whereas the female voice was louder and cursing." (*Walker II*, *supra*, E077548.)

The People argued, "defendant has a recidivist nature regarding domestic violence crimes. He has at least four prior felony domestic violence convictions within the last 15 years. He's been to prison twice in the last 15 years for domestic violence crimes. His strike prior is for a domestic violence related case." The court denied the *Romero* motion. (*Walker II*, *supra*, E077548.)

The court noted that it had read and considered the probation officer's report, along with the People's sentencing memorandum. Defense counsel asked that his arguments made in support of the motion be incorporated into his arguments regarding sentencing and argued that the incident "started out as self-defense. I believe that would be mitigating." (*Walker II*, *supra*, E077548.)

The court then stated the following: "[T]here was no evidence presented that would support mitigation in this case. None. There's nothing presented to me through sworn testimony. There was a lot of just [defendant] making arguments from his chair,[2] which is not evidence. So there's nothing to support the idea that there was anything mitigating in there going on and that because of the GBI, because of his history and his

---

**2** Defendant represented himself at trial.

7

record, I find that the aggravating circumstances far outweigh any mitigation whatsoever and absolutely support a finding of upper term, especially given all of the prison sentences he's had."  (*Walker II*, *supra*, E077548.)

The court sentenced defendant to an aggregate term of 17 years of imprisonment, consisting of the upper term of four years on the substantive offense, doubled due to the prior strike; the low term of three years on the GBI enhancement; one year on the prior prison term; and five years on the prior serious felony conviction.  The court struck punishment on the second prison prior.  The court dismissed count 3 on the People's motion.  (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

Defendant appealed contending that he had received ineffective assistance of counsel when defense counsel failed to object to the court's dual use of two sentencing factors, the GBI and defendant's criminal history, in imposing the upper term.  The People conceded that the court should not have relied upon the GBI and the two felony convictions that were the bases of the prior prison conviction and prior serious felony conviction enhancements to impose the upper term.  (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

We agreed that the court was not permitted to use "the fact" of the GBI enhancement to impose the upper term.  However, we determined that the court relied on several reasons for imposing the upper term, including "the GBI, [defendant's] history and his record [and] all of the prison sentences he's had."  Thus, it was clear from the court's statement of reasons that it did not use "the fact" of defendant's prior conviction

enhancements as aggravating circumstances. Rather, the court relied on defendant's "history and his record." (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

We observed, "In citing defendant's history, record, and numerous prison sentences, the court apparently relied on the aggravating factors that defendant's prior convictions were numerous and that he served multiple terms in prison or county jail. [Citation.] His criminal history dates back to 1998 and includes 11 infractions, 10 misdemeanors, and four felony convictions. The felony convictions were for assault with a deadly weapon [citation] and inflicting corporal injury on a spouse [citation]. The record shows that defendant has spent numerous days in jail and several years on probation for his misdemeanor convictions. He has also been sentenced to at least three prison terms. We further note that the court heard and considered defense counsel's argument regarding mitigating circumstances, namely that there was '"great provocation."' However, it found no mitigating factors." (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

We concluded that defendant could not show prejudice from defense counsel's failure to object to the dual use of facts, and that the court properly imposed the upper term. However, we remanded the matter for resentencing pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.). (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548.)

On remand from this court, defense counsel filed a sentencing memorandum inviting the court to strike the prior serious felony enhancement and prior strike

9

conviction. Defense counsel argued the court should exercise its discretion to do so based largely on defendant's "exemplary behavior" as a "model inmate." The People filed opposition. The People argued, in part, that defendant's "recidivist history and public safety concerns" militated against striking any strike or enhancement. (*Walker II*, *supra*, E077548.)

At the hearing on February 7, 2020, the court noted that it had reviewed the remittitur, the probation report, defense counsel's resentencing memorandum, the People's opposition, and the sentencing transcript. In reviewing the sentencing transcript, the court stated: "I didn't see anywhere in there that I made such a statement where I would say, . . . I realize this is a long time. If I had discretion, I would strike the strike. I would strike the nickel prior. I would do these things." "So in looking at the transcript, it didn't indicate in there anything about my views [that] it was too much time, [that] I wish I had discretion on this, nothing of that nature. In fact, it was quite the opposite. I think I said something like [defendant] fits squarely under three strikes and there was no reason to grant his *Romero* motion. I could not say he fell outside of the whole point behind three strikes." (*Walker II*, *supra*, E077548.)

Defense counsel argued, "the Court has an option to go all the way to striking the strike and imposing probation if it wanted to take such a leap of faith." "The defense simply is saying it really comes down to the weight the Court chooses to give [defendant's] behavior over the last three, four years." (*Walker II*, *supra*, E077548.)

10

The court declined to revisit its decision on the *Romero* issue: "So nothing in my mind has changed. [Defendant's] history is still the same. The offense is still the same. This [victim had] . . . two black eyes with bruising and swelling, bruising to the left side of her face, pain and bleeding to the nose and felt broken, pain to her jaw, had trouble talking for a few days following the attack, a cut above her eye, scratches to her face. Her top teeth felt like they were hurt. [She] felt like they were going to fall out. They were numb. The ones on her left side felt numb. Her teeth felt numb. She was in a lot of physical pain, her head was hurting, everything was hurting for several days. The GBI enhancement was found true." (*Walker II*, *supra*, E077548.)

The court further explicated, defendant's "history of domestic violence dates back to 2001 when he was initially granted probation out of San Bernardino for a DV case, a 273.5. He then promptly violates that probation because he picked up a 245(a)(1) wherein he was sent to prison for two years. He gets paroled and then violates his parole at least six times in 2005. [¶] He's then charged in 2007. And then in 2007, guess what happens? He gets convicted of another 273.5 and a 245(a)(1). And he's sent to prison for four years. He gets paroled and then violates his parole at least three times. He gets discharged in 2012. He commits this case, this violation in 2014. Not even two years goes by and he commits another act of violence against another woman causing great bodily injury. [¶] This is not a person that I'm going to show mercy to, that I'm going to give them a break, that I'm going to wash away the strike prior or the prison priors. They have not earned that. I'll do it if I think the person's earned it. I've got no problem doing

11

it, but [his] . . . history speaks for itself. And the case in chief speaks for itself." "This type of history to me indicates a fundamental systematic . . . issue with the defendant's behavior that requires a lengthy sentencing not only to give him time to work on that, but to protect the public from this ever happening again." The court declined to exercise its newfound discretion to strike the nickel prior. (*Walker II*, *supra*, E077548.)

Subsequently, defendant personally argued at length that his efforts in programs to better himself since reaching prison warranted an exercise of the court's discretion to strike the nickel prior. Defendant contested the court's finding that he had multiple parole violations, asserting that he was "never convicted of a single violation." (*Walker II*, *supra*, E077548.)

The court noted that it was just going off what was contained in the probation officer's report and that, regardless, "[i]t still doesn't wash away the 11-year history of domestic violence." The court continued, "if what I'm doing here is balancing those against the history that you have displayed for 11 years leading up to the instant offense . . . it is not something that . . . causes me to find that it is in the interest of justice to strike the nickel prior. Okay. It is too lengthy. Too many victims. Too many severely injured people, women, too many times in prison." Nonetheless, pursuant to Senate Bill No. 136, the court struck both of defendant's prior prison term enhancements, resulting in a one-year reduction in defendant's sentence. (*Walker II*, *supra*, E077548.)

Defendant appealed. We held that it was not reasonably probable the court would have imposed a sentence more favorable to defendant in the absence of its reliance on the

12

improper GBI factor.  We noted the evidence in support of the court's properly relied upon aggravating factor, defendant's criminal history, was "'overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding."'" We held that the court or the jury, "'applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance,'" specifically defendant's criminal history, such that any error in not submitting that factor to a jury or court trial was harmless.  (*Walker II*, *supra*, E077548.)

## II.  DISCUSSION

Defendant contends that the matter should be remanded for a full resentencing hearing because the trial court unconstitutionally relied upon its own factfinding to impose the upper term on defendant's conviction, and the error is not harmless beyond a reasonable doubt.  We agree.

On "January 1, 2022, the Legislature . . . amended section 1170 to provide that the trial court 'shall,' in its discretion impose a sentence 'not to exceed the middle term' [citation] except in the following circumstance:  'The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of' an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'  [Citations.] Notwithstanding these provisions, the court 'may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without

13

submitting the prior convictions to a jury.' [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at p. 748, fn. omitted.)

"[T]he trial court's factfinding role as to a defendant's prior convictions [is] specifically exempted from the Sixth Amendment jury trial right. [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at p. 767.) However, "any fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial." (*Wiley*, *supra*, 17 Cal.5th at p. 1084.) For example, a defendant is "entitled to have a jury determine whether his prior convictions were of increasing seriousness and whether he had performed unsatisfactorily on probation, before the court could rely on those aggravating facts to find justification for an upper term sentence." (*Id*. at p. 1085.)

Likewise, a court's determination that a defendant has suffered prior criminal convictions on separate occasions, that the offenses were close in time, and that they were similar or intertwined in purpose and character runs afoul of constitutional proscriptions and must be resolved by a unanimous jury beyond a reasonable doubt. (*Wiley, supra,* 17 Cal.5th pp. 1082-1083 [Error for court to impose additional time based on its "qualitative assessment of the offenses' 'time, location, character, and purpose'"], quoting *Erlinger v. United States* (2024) 602 U.S. 821.)

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman*

14

standard of review.  [Citations.]  Under that standard, 'a sentence imposed under . . . section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.'  [Citations.]  Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue.'  [Citations.]"  (*Wiley*, *supra*, 17 Cal.5th at p. 1086 [error not harmless where a rational jury could have concluded that the People failed to prove beyond a reasonable doubt that the defendant's convictions were of increasing seriousness]; accord, *Lynch*, *supra*, 16 Cal.5th at pp. 742-743, 760-761, 768, 775 ["We may . . . find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence'"].)

It is notable here that the sentencing court, on remand from this court's first opinion, did conduct a qualitative and quantitative analysis of defendant's criminal history:  "It is too lengthy.  Too many victims.  Too many severely injured people, women, too many times in prison."  (*Walker II*, *supra*, E077548.)  However, contrary to defendant's implication,{DSupp 9} the court's reasoning there was not used to support imposition of the upper term; in fact, the court on remand was not considering whether to impose the middle or upper term; rather, it was considering only whether to strike the

15

prior strike conviction and prior serious felony enhancement. Thus, its reasoning was not constitutionally improper.

However, the court, when originally sentencing defendant, effectually relied upon two factors in imposing the upper sentence: (1) the GBI; and (2) defendant's prior convictions. A jury found the former factor true; however, as discussed in our previous opinion, the court erred in relying on that factor in imposing the upper term. Nonetheless, we held the error harmless beyond a reasonable doubt because any jury unquestionably would have found true the latter factor, and we were assured that the trial court would have exercised its discretion to impose the upper term based on just that factor. (*Walker II*, *supra*, E077548.)

The latter factor remains proper for consideration by a court in imposing an aggravated term without a jury determination when made upon a certified record. (*Lynch*, *supra*, 16 Cal.5th at pp. 748, 767; *Wiley*, *supra*, 17 Cal.5th at p. 1084; § 1170, subd. (b)(3).) We discern no opacity in the sentencing court's reliance on defendant's "history and his record," and "all the prison sentences he's had." Like the People at oral argument, we agree that the court was clearly describing defendant's prior convictions.[3]

Nonetheless, in abundance of caution, we find that the latter portion of the court's statement, "all the prison sentences he's had," is capable of being interpretated as a

---

[3] Indeed, in his first appeal, defendant contended the court erred in impermissibly relying on two aggravating factors: (1) the GBI; and (2) defendant's "prior criminal history." (*Walker I*, *supra*, E067404.)

16

forbidden quantitative assessment. Indeed, we previously observed, "In citing defendant's history, record, and *numerous* prison sentences, the court apparently relied on the aggravating factors that defendant's prior convictions were *numerous* and that he served multiple terms in prison or county jail." (*Walker I*, *supra*, E067404; *Walker II*, *supra*, E077548, italics added.) Thus, any reliance on the numerosity of defendant's convictions was required to have been determined by a jury beyond a reasonable doubt or to have been stipulated to by defendant, neither of which occurred here.

The court here admitted certified records of defendant's prior criminal history into evidence at the court trial on defendant's prior convictions. Those records reflect that in 2001, defendant pled guilty to assault with a deadly weapon (§ 245, subd. (a)(1)) and infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)). They further reflect that in 2007, a jury convicted defendant of infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)) and assault with a weapon (§ 245, subd. (a)(1)). Still further, they reflect that in 2016, a jury found defendant guilty of infliction of corporal injury on a spouse. (§ 273.5, subd. (a).)

Thus, to the extent the court relied solely on the bare fact of defendant's prior convictions, the court properly found that the upper term was warranted, because that is precisely the sort of bare fact a court is permitted to determine itself based on a certified record. (*Lynch*, *supra*, 16 Cal.5th at pp. 749, 767; § 1170, subd. (b)(3).) However, as noted *ante*, because the court's characterization of defendant's prior convictions is susceptible to being characterized as positing on their numerosity, that portion of the

17

court's reasoning for imposing the upper term was required to be determined by a jury beyond a reasonable doubt.

Neither can we find any error harmless. Guided by *Lynch* and *Wiley's* determinations that the errors in those cases were not harmless, we cannot say that a properly instructed jury would necessarily have found defendant's convictions "numerous."

In *Wiley*, the court could not find harmless the court's imposition of the upper term without a jury determination based on its finding that the defendant's prior convictions were of increasing seriousness, where the defendant's criminal history began with an infraction in 1998; a felony conviction in 1998; eight misdemeanor convictions between 1998 and 2018; and additional felony convictions in 2005, 2009, 2015, 2016, and 2020. (*Wiley*, *supra*, 17 Cal.5th at pp. 1087-1090 ["we cannot conclude beyond a reasonable doubt that a properly instructed jury would have found Wiley's criminal convictions were of increasing seriousness"].)

Likewise, the *Wiley* court could not find harmless the court's imposition of the upper term without a jury determination based on its finding that the defendant performed unsatisfactorily on probation, where the defendant had once successfully completed probation, twice violated probation and had his probation revoked due to his arrest and conviction on new misdemeanor and felony offenses, and violated the terms of his post release community supervision, when he was convicted of a new misdemeanor offense.

18

(*Wiley*, *supra*, 17 Cal.5th at pp. 1090-1091 [Court could not "discount the possibility that a rational jury could have disagreed as to whether the People had proved that Wiley's overall performance on probation was unsatisfactory"].) Thus, the matter must be reversed and remanded.

"Further proceedings on remand are to be conducted in accordance with the current statutory requirements . . . . [Citation.] On remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court. The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence. [Citation.] If it cannot so conclude, it may impose no more than a middle term for each of the counts on which [defendant] stands convicted. [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at pp. 777-778.)

In other words, the People may either concede to the resentencing of defendant to the midterm or attempt to prove the aggravated term by one of several methods, including alleging, on a certified record, that the bare fact defendant's prior criminal convictions warrant imposition of the upper term. (*Lynch*, *supra*, 16 Cal.5th at pp. 748, 767; *Wiley*, *supra*, 17 Cal.5th at pp. 1084-1085; § 1170, subd. (b)(3).)

19

## III.  DISPOSITION

"The judgment . . . affirming [defendant's] sentence is reversed.  We remand to the . . . trial court for further litigation of the aggravating circumstances[,] and for the court to exercise its discretion under current section 1170(b) as indicated here. [Citation.]"  (*Lynch*, *supra*, 16 Cal.5th at p. 778.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.